A. BOYCE F. BOURDON C. FORTELLA J. BOYCE L. ALVANO L. HAMILTON P. FURMAN Good morning, Mr. Furman. Good morning, Your Honor. Furtz Furman appearing on behalf of Christopher Boyce. May it please the Court. Would you like to reserve some time? Yes, Your Honor. I'd like four minutes. Four minutes. Thank you. You may proceed. Yes, Your Honor. The critical issue here is one of fairness. That is, there was a stipulated judgment that there's substantial evidence was coerced with threats of loss of custody of the only daughter of the marriage and also criminal prosecution. We're going to go to the DA if you don't sign the stipulation. And didn't you bring that in front of the state court judge that approved the stipulated judgment? Yes, Your Honor. And didn't you lose? Yes, Your Honor. And why wasn't that appealed? Your Honor, I am not sure. I think essentially it was affirmed after the stay was annulled in this case and our appellate time had lapsed. The stay was still in effect even though counsel for Mr. Boyce took the matter to that hearing. Also, Your Honor, it's very important to note that the reason for the denial of that motion, essentially the judge said, your past, the two years, get out of here. And the extemporaneous comments that the bankruptcy court relies on heavily were simply that, extemporaneous, and they were not necessary to the denial of that motion. Right out of a block. That gets to a really interesting point, which is what did she do? Because she can adopt the findings on sort of a preclusion argument or she can simply say you've got a fair shake because I seem to recall being involved with this at step one. And at step one we said, yeah, that was void, so you couldn't rely on it for anything and sent it back. But once she'd seen that superstructure of the state court action, because we're in the public policy prong of issue preclusion, right? Yes, Your Honor. Couldn't she say I don't see public policy being offended because that opportunity was provided? Yes, Your Honor, except that if you read the state court's judgment carefully and Judge Bauer highlights much of that tentative ruling in that case, right out of a block he says you're past the two years, you know, that's the end of it. Well, that's one reading of it, and that brings an interesting point to what Judge Taylor is saying. Judge Bauer isn't passing on the validity of this decision by the state court, right? She's not reviewing it to see if it is valid or proper. She can just consider it. And the other consideration is you didn't bring anything up even until the adversary was filed. That can be the lack of diligence. And what was wrong with that? The ---- I don't have an explanation as to why the debtor did not, Mr. Boyce, didn't take more aggressive action sooner. However, once he was past the two years, essentially that was the end of the analysis for the judge. That was the only necessary finding. So it was his motion was overruled. But did the judge rule it's precluded or just it's indicative? Well, she gave it preclusive effect. Oh, no, I mean the state court judge. The state court judge said it's two years, so I don't have to think about anything else, see you later? Yes, that's if you read the first paragraph. I did read it. Okay. So you don't think it's indicative. You think it's preclusive. I think it's that's the whole basis of the decision. He could have stopped right there in the one paragraph. But it's also interesting that he is speaking extemporaneously and says, well, I'm not going to consider your reply because it should have been in the original motion. But if I did, this is what I think. And it's critical. And Judge Bauer cites it. He says that the defendant didn't make out a case for a meritorious defense. And he says it certainly appears to be negligence and or misconduct on the part of defendant leading to the loss of plaintiff's money in apparently just eight months. I think that is an important note because if it was merely negligence, clearly that's not a basis for a non-dischargeable judgment. And misconduct is very vague and amorphous, and under the modern interpretation of 523A6, misconduct in and of itself is not enough. Except that your client agreed that it was fraud. That's the issue. This isn't A6. This is A2A. That's right. And so there's essentially one place in the judgment that says it's fraud. Judge Bauer says that's enough for me, except that you can't ignore the significant and substantial evidence that this judgment was coerced or that signature was coerced. But you haven't overturned it. It's still out there. It is still out there. And we're supposed to just ignore that? You don't have to simply ignore it, but you don't have to apply collateral estoppel. Right, but that's for the judge to decide. What's the standard on appeal for us in terms of that decision? Is it de novo? Does it abuse of discretion? And she applies that one prong. She's got the law right. I think it's de novo, Your Honor. The review of summary judgment at this court is de novo. At a minimum, the judge should have had an evidentiary hearing to determine whether his signature on that stipulated judgment manifested the intent necessary to give a collateral estoppel effect. I'm going to disagree with you, I think, because it seems to me it's a tricky bit, because what he agreed to, and we're not really arguing about what he agreed to, matched up with A2A. So, and there's a final judgment, and you then apply California issue preclusion. We give full faith and credit, comity, all those, you know, high-level words that we live by. And it's applicable, but California has that public policy piece. And so she recognizes it. She says, I've got to look at this. There's these allegations. I've got to look at that one piece and decide whether or notwithstanding, and I've decided that given what happened in the state court, this thing is capable of collateral estoppel. So I see it's diverging. We're doing a Robert Frost thing. There's two paths in the woods, and I'm taking one and you're taking the other. So try and get me on your path. Your Honor, the public policy argument or the public policy analysis was one paragraph out of a seven-page decision, and where she gets off the path of applying collateral estoppel is even the state courts say that the linchpin of applying collateral estoppel is fairness. And she doesn't go down that analysis. Also, she critically doesn't make the analysis about the important prong of collateral estoppel in that there's a strong provision and a strong public policy, and I would say equally as strong as the finality of judgments, is to determine matters on the merits. And he's never had his day in court to determine the case on the merits. I don't think that's the best argument because California's been clear for a long, long time that default judgments qualify. I don't know that that's the majority rule in the country, but I know it's not a universal truism. California is one of those places where even on the default we can't apply issue preclusions. So how do you factor that into your analysis? And stipulate it if they intend to be bound, right? That they intended to be bound, but intent is a question of fact. It's a major question of fact, particularly given the record here where we have these e-mails, these text messages, I'm going to take this matter to the DA, I'm going to send it to jail. Those are all intense, factual inquiries, Your Honor, and they were sloughed over and not carefully analyzed in the decision. It's just, well, we have this public policy to give full faith and credit, and we're going to blindly follow it, and I don't think that should have been the end of the analysis. Do you have a California case that you would point us to that talks about application of the public policy prong and that suggests that an independent evidentiary hearing is required? I'm not aware of one, Your Honor. That's kind of fair. Yes, Your Honor, but in this case, the facts are a little more unique in that we have a fairly strong record of coercive behavior. The two critical things that make people scared the most, regardless of your position in life, whether you're a judge on the Supreme Court or a doctor or the head of GM, is, one, our children. I mean, regardless of how we are in our professional life, our children are indeed our Achilles' heel and the most important thing in our life, and a threat to those, our children, scares us far more than a threat to us personally, and it essentially turns us into jellos sometimes and the worry that doesn't necessarily stop even when they get to be 18. And secondly, Your Honor, the risk of loss of freedom. Going to jail is no fun. It's very scary, particularly if you've never been there. And so the two linchpins, Achilles' heels, of most human beings, their children and going to jail, were tightened and used, in this case, by the appellee, and that's never been fully addressed either by the state court. He talks about it a little bit and says, well, he's a sophisticated businessman. Well, regardless of how sophisticated you are, a threat to going to jail and a threat to your children or taking your child away from you has significant coercive effect, regardless of your level of sophistication or success in life. All right. Well, Your Honor, do you wish to reserve the rest of your time? Yes, Your Honor. Thank you, Your Honor. Got a lot of paper. May I please quote? My name is Jonathan Alvarez, and I'm here on behalf of appellee Lisa Hamilton. I'm going to use most of my time to answer any questions you have. I feel the briefs explore anything and everything possible. I'm sure Your Honors have read everything in pretty much great detail. I know Your Honor Taylor was part of the original appeal, so there's definitely a history here. One of the points my colleague brought up is fairness and how the state court's ruling was extratraneous in regard to the duress, coercion, et cetera. I would disagree with that assertion. The state court gave a very detailed ruling. He did give a ruling saying you did nothing for X amount of years. I can deny it on that basis. But he went on to say even if I were to consider on an equitable basis and then gave an entire page of why he did not buy these arguments, he specifically stated the defendant was not credible. Christopher Boyce raised all these issues. I thought Lisa's attorney was my attorney. She threatened to send me to jail. She threatened to take my children away from me. She threatened this. She threatened that. This was all outlined in the declaration to the motion to rescind. That was the declaration that was submitted to the bankruptcy court in support of their opposition to motion for summary judgment. They didn't even do a declaration in opposition to the motion for summary judgment. They just submitted this declaration from Christopher Boyce in relation to the motion to rescind. Those were all considered by the state court. We go back to Judge Bauer. Judge Bauer considered all those facts. He admitted to this fraud. He admitted. He specifically stated not only in the actual stipulated judgment, but in the comments he made when he was working with Apelli's attorney to draft the stipulated judgment. When you consider actually litigated, when you consider fairness, he took part in over approximately two months of negotiation over the stipulated judgment where he admitted things saying, well, I understand that the purpose behind this is to create a nondischargeable debt. I understand as an attorney, a bankruptcy attorney, that you can't do that. You know, that can't be a term of a stipulated judgment or a contract in general. But it does show intent. It does show he knew what he was doing. Why would he go do all this type of research if he thought, you know, I'm going to jail or I'm being coerced or this or that? It just doesn't make sense. The state court saw that. The state court said you're not credible. The bankruptcy court saw that the first go around. There was a mistake in procedural, you know, posture on that. It was resolved when the stay was annulled. The bankruptcy court then took it under submission again. And in January of this year, Apelli's bankruptcy counsel, not Mr. Furman, but Mr. Cunningham, put up probably about 40 minutes worth of argument at a status conference on what Judge Bauer should or should not consider prior to making a ruling on this case. He stressed public policy. He stressed the fact that Michaelene Cody, Lisa's former attorney, represented herself as the attorney for Christopher Boyce as well. He stressed these things. And the court actually took it seriously, much to my dismay at that time, but appreciated once her written decision came out. She considered it all. She weighed that public policy. And here we have a gentleman who agreed to something, had a judgment entered against him, sat around for a couple years, decided to file bankruptcy, and only once it was challenged did he make an issue of it. Only after the adversary proceeding was commenced did he go forward and say, oh, wait, I want to try and get rid of this judgment now. I'm going to go to the state court. I'm going to oppose your motion for summary judgment. On all these different types of grounds, you talk about fairness. Where is the fairness for Lisa Hamilton in that? I'm not going to contest the fact that this divorce proceeding has been acrimonious and emotional between the parties. It has. But really that has no bearing on what the bankruptcy court was asked to do, what the state court did, and what the panel is, you know, hopefully will affirm. So how do you characterize what Judge Bauer did with the state court's decision on the motion to rescission? On the motion to rescission, I think Judge Bauer looked at what was said, looked at the evidence that was presented in opposition to my client's motion for summary judgment, and each and every separate statement, you know, where they tried to dispute a fact, it was coercion, fraud, undue influence, et cetera. So I think Judge Bauer then molded what the state court said, realized what they were asking for here, their only defense, so to speak, their only chance at disputing these facts were this coercion and whatnot, realized the state court made a decision, realized the state court made a valid decision, took that into account, looked at the judgment herself, looked at the facts, and said, you know what, I agree with this court. And she did it twice. And the second time she did it, it was even more in-depth than the first time. So did she just ask the question Judge Spraker asked, because I'm not quite sure I'm getting what you're hearing, did she treat it as preclusive or she just reviewed it and found it persuasive? And how do you distinguish between those and tell us what she did? Honestly, I don't know that she did either individually. I think she almost did a combination of both. She took and said, I am not going to give an inconsistent ruling with the state court, because that would make a mess. How do you have a state court judge saying, you know, none of this was credible? Then you have the bankruptcy court reaching another decision. That would make it very confusing. But I also think she took a look at it on her own and did not find any of the evidence credible. The record was devoid in any type of evidence that would support their claim. So I think she also individually kind of reached it. I flipped that. Yeah, no, that's helpful. And nobody called any witnesses here, right? This is all in declarations. No, this is all declarations. In the state court and? Correct, Your Honor. And as I pointed out earlier, there was the only declaration that was submitted on behalf of appellant was his declaration in support of the motion to rescind. There was no declaration in support of opposition to summary judgment. He just incorporated all those arguments, which were found unpersuasive. Okay. I will just raise one other issue as to the standard of review at this point. If the court does find that issue of preclusion does apply, it then becomes abusive discretion. And I learned that partially from the memorandum that the panel set forth the time before, that that's what was used. And so when making these arguments, I kind of tried to tailor to that. Issue of preclusion is here. It was actually litigated. There was manifestation of intent. So really, did Judge Bower make a mistake based on what was in front of her and based on what she had to deal with? And, you know, I don't see that. I don't see anything in the record. I don't see anything in their argument. And both with the state court hearing and with Judge Bower's discourse with appellant's bankruptcy counsel. And unless you have anything for me, I'll. No, I don't. Thank you very much. Thank you. Thank you, Your Honor. May it please the court. Fairness is still the operative standard here, and the judge in the state court, how can you say that somebody's not credible when they're not even on the stand? And also you have e-mails threatening criminal prosecution, and then you have a declaration from the plaintiff, Ms. Hamilton, that says, oh, I never threatened them. Well, those e-mails directly contradict her declaration. So how can you at a hearing on the declarations alone say that that's not credible? Too bad you didn't appeal it. I'm sorry, Your Honor. Too bad you didn't appeal that, right? Yes, Your Honor. That is too bad. Yeah. But it's not the end of the road. In order to give preclusive effect, which the court doesn't have to do, he's got to manifest an intent to be bound, and there's sufficient evidence to say that that's a factual dispute and one which ought not to be granted for some of the judges. He intended to be bound, and he didn't intend to. I mean, is it not fair to say that he entered into the settlement because he hoped he'd be able to perform it, and he intended to be bound by it when it got him something? I have a little bit of a problem with the argument, which is basically that if I tease it out that it was a fraudulent deal from the beginning because he never intended to be bound by what he signed. He wanted the benefits of that settlement agreement, didn't he? Well, Your Honor, that's not the whole picture because, no, it wasn't a fraudulent deal. He was under stress. He wanted to put this behind him, particularly while he's being threatened with jail and loss of custody. But he got no benefit in terms of a discount on the dollar amount. He stipulated to the whole amount. Also, I think it's critical to point out is that he gave back the vast majority of the money. I mean, I think there was $2 million or $3 million. The only thing in dispute is $700,000. So typically fraudsters don't steal $2 million or $3 million and give it all back except $700,000. That's not the usual pattern, and there's an inverse relationship between what you give back and what you try to do to make things correct. There's no dispute he owed her the money, but the question is, is it fraud? But what you do to give back is an inverse relationship to the level of intent necessary to establish fraud and the level of fraud. Also, it's important to note that in their agreement, he had the absolute discretion under their agreement as to how the funds were to be used. He had the discretion, and so he had discretion. He gave a significant portion of the money back, and he stipulated to the full amount. He didn't dispute that he owed it, but he was under tremendous pressure, so he intended to certainly be bound to the amount. And I agree that if I were just sitting here saying, well, no, the amount's in dispute and he can't be bound by the amount, that would be a different argument, which I'm not making here. I'm saying that this is virtually a prepetition waiver of discharge. It's against public policy, and the entire manner in which it was obtained is against public policy and against fairness and against having matters decided on their merits. So I agree that he's probably stuck with the amount, but whether it's fraud or not is certainly a question of fact not amenable to a summary judgment. And the analysis is, I think, insufficient to make a summary judgment in this case. All right. Well, thank you for your good arguments. This will be under submission. Thank you, Your Honor. Thank you.
judges: Taylor, Lafferty, and Spraker